## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| TIA ELIZABETH FOLEY, | CASE NO. 5:22-CV-00912-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Tia Foley filed a Complaint against the Commissioner of Social Security (Commissioner) seeking judicial review of the Commissioner's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On June 1, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. (Non-document entry dated June 1, 2022). Subsequently, all parties consented to my exercising jurisdiction over this matter pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure (ECF #8), so on August 5, 2022, this matter was reassigned to me for disposition (non-document entry dated Aug. 5, 2022). Following review, and for the reasons stated below, I **AFFIRM** the Commissioner's decision denying SSI.

PROCEDURAL BACKGROUND

Ms. Foley filed for SSI on March 6, 2020, alleging a disability onset date of November 7, 2017. (Tr. 171-77). Her claims were denied initially and on reconsideration. (Tr. 105-09, 118-20). She then requested a hearing before an Administrative Law Judge. (Tr. 121-23). Ms. Foley, (represented by counsel), and a vocational expert (VE) testified before the ALJ on March 12, 2021. (Tr. 32-65). On May 5, 2021, the ALJ issued a written decision finding Ms. Foley not disabled. (Tr. 12-31). The Appeals Council denied Ms. Foley's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 416.1455, 416.1481). Ms. Foley timely filed this action on June 1, 2022. (ECF #1).

FACTUAL BACKGROUND

I.     **Personal and Vocational Evidence**

Ms. Foley was 34 years old on her alleged onset date, and 35 years old at the administrative hearing. (Tr. 171). She completed high school and previously worked as an aide for disabled adults. (Tr. 41, 43).

II.    **Relevant Medical Evidence**[1]

In January 2020, Ms. Foley had a positive depression screening. (Tr. 350). In June 2020, she began counseling at Lifecare Family Health. (Tr. 409). She reported night terrors, flashbacks, paranoia, depression, and anxiety, and said she was not comfortable around a lot of people. (Tr.

---

[1]     Ms. Foley challenges the ALJ's assessment of her mental conditions, claiming that her mental health impairments alone render her unable to perform substantial gainful employment. (*See* Pl.'s Br., ECF #9, PageID 658). The Commissioner noted that "Plaintiff is only challenging the ALJ's evaluation of her mental impairments. Therefore, the Commissioner focuses on evidence relating to Plaintiff's mental impairments." (Comm'r's Br., ECF # 11, PageID 688). Because Ms. Foley's Complaint relates only to an opinion regarding her psychiatric conditions, my discussion of the medical evidence is limited to that relating to Ms. Foley's mental health.

2

409). A mental status examination revealed she was depressed and anxious, with impaired attention and concentration. (Tr. 411). She was well-groomed and cooperative, and displayed average eye contact, calm motor activity, clear speech, and logical thought processes with no hallucinations, delusions, or suicidal ideations. (*Id.*). She was continued on her anxiety medications. (Tr. 405).

At a July 22, 2020 follow-up visit with Linda Kimble, CNP,  Ms. Foley related that her anxiety, although moderate in severity, was worsening and accompanied by symptoms of chest pain, a choking sensation, diaphoresis, dizziness, fainting, flushing, gastrointestinal upset, headaches, heart palpitations, hyperventilation, muscle pain, muscle spasms, paresthesia, racing heart, shortness of breath, and tremors. (Tr. 405, 415). She was having more anxiety than depression. (*Id.*). She rated her anxiety as 3 to 5 on a scale of 10 when at home, but much higher outside the house or in crowds. (Tr. 415). She was depressed, angry and anxious. (*Id.*). However, she was cooperative; her memory, attention and concentration were intact; and her thought process was logical, coherent and goal directed. (*Id.*). She was advised to follow up in ten weeks or call sooner if needed. (Tr. 417).

Ms. Foley was discharged from counseling in January 2021. (Tr. 407). Her condition was described as "improved," and she was not given any referrals or recommendations. (*Id.*).

Ms. Foley saw CNP Kimble on March 10, 2021 for a medical management follow-up. (Tr. 421-26). She had not been taking her medications because her insurance did not approve them, and as a result was having trouble sleeping. (Tr. 421). She reported constantly experiencing symptoms of her anxiety, but they were improving. (Tr. 421). She had been isolated in her room for about one month, stopped reading books, and continued to have nightmares. (*Id.*). Her

3

medications were modified, and she was advised to follow up in six to eight weeks or as needed. (Tr. 421, 426).

## III.    Medical Opinions

State agency medical consultants reviewed Ms. Foley's record at the initial and reconsideration levels.

Ms. Foley had a consultative examination with Cheryl Benson-Blankenship, Ph.D. (Tr. 378-83). Ms. Foley reported having always had a variety of mental health issues through the years, including post-traumatic stress disorder (PTSD), agoraphobia, panic disorder, anxiety, and major depressive disorder. (Tr. 379). She said her home was her comfort zone and that her symptoms worsen when she is in public. (*Id.*).

Dr. Benson-Blankenship's mental status examination noted good grooming and hygiene; cooperative attitude and behavior; normal affect with no evidence of anxiety or depression; normal thought content; coherent, logical, and organized speech; and full orientation. (Tr. 380-81). Dr. Benson-Blankenship opined that Ms. Foley's understanding and memory were intact, social interaction was mildly to moderately impeded, and adaptation and stress tolerance was mildly impeded. (Tr. 383). She concluded Ms. Foley can understand, remember, and carry out simple oral instructions, and had adequate comprehension and memory. (*Id.*). Dr. Benson-Blankenship described Ms. Foley as being not overly distracted and noted her ability to maintain attention, concentration, persistence, and pace appeared to be intact. (*Id.*).

State agency psychological consultant Deryck Richardson, Ph.D., reviewed Ms. Foley's mental health records. (Tr. 92). Dr. Richardson considered Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and

stressor-related disorders), and concluded Ms. Foley did not satisfy the paragraph B or C criteria. (Tr. 95-96). Specifically, Dr. Richardson concluded Ms. Foley had mild limitations understanding, remembering, or applying information; interacting with others concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.*). Therefore, Dr. Richardson concluded Ms. Foley's impairments did not meet or medically equal Listings 12.04, 12.06, or 12.15. (*Id.*). Dr. Richardson determined none of Ms. Foley's mental impairments were severe. (Tr. 96).

State agency psychologist J. Paul Tangeman, Ph.D., reviewed Ms. Foley's mental health records in September 2020 and concurred with Dr. Richardson's findings. (Tr. 99-103).

## IV.     Other Relevant Evidence

School records demonstrate Ms. Foley exhibited a learning disability in reading, reading comprehension, and written language. (Tr. 458). On May 17, 2004, Ms. Foley was referred to Rehabilitation Services with a diagnosis of exotropia, hydrocephalus with shunt, and specific learning disability. (Tr. 459). Her IEP for the 2003-04 school year noted an overall ability in the average rage compared to students her age. (Tr. 460). She demonstrated weakness in short-term auditory memory. (*Id.*). Her basic reading and reading comprehension skills were in the borderline range and her math calculations and applied math skills were in the low average range. (*Id.*). While she could add multi-digit numbers requiring regrouping, she had inconsistent success subtracting and multiplying the same. (*Id.*). She struggled with long division and had trouble applying math concepts, such as money, time, and measurement to real-life situations. (*Id.*). Her written language skills were borderline; while written sentences were satisfactory in content, they lacked consistent punctuation and capitalization, and she demonstrated difficulty combining several pieces of information into one sentence. (*Id.*).

V.      **Administrative Hearing**

At the administrative hearing, Ms. Foley testified she lives with her husband and two sons, ages 11 and 10. (Tr. 40). Her husband does not work due to back issues and rheumatoid arthritis, and his disability status is pending. (*Id.*). At the time of the hearing, Ms. Foley's children attended school virtually due to the COVID-19 pandemic. (Tr. 41). Her family receives food assistance. (*Id.*). She has a driver's license and can drive. (*Id.*).

Ms. Foley completed high school. (Tr. 41). She attended college for a short period of time but did not obtain any degrees or certificates. (Tr. 42). The last time Ms. Foley worked for payment was September through November 2017, when she was a line cook at a fast-food restaurant. (*Id.*). Before that, she worked as a home health aide for her father-in-law from February until August of 2015. (*Id.*).

From 2006 to 2009, Ms. Foley worked for Hope Home, a group home aide for disabled adults. (Tr. 43). In that role, she prepared dinner, helped transfer clients from a van or bus, prepared them for bed, provided medications, and took them to church, the store, or the park, depending on their level of mobility. (*Id.*). At that job, the most she lifted was a 100-pound client. (Tr. 44). Ms. Foley left this job when she married because she relocated to Tennessee. (*Id.*).

Ms. Foley cannot work because she has severe anxiety. (Tr. 45). She has a hard time being around people, and crowds make her anxious, causing her to lose focus and have panic attacks. (*Id.*). She struggles to do simple tasks such as grocery shopping and will often take one of her sons with her to "keep her focused" rather than worry about the other people around her. (*Id.*). She struggled with the same issues when working at the group home, but not to the same extent

6

because another aide would accompany her and keep the clients away from crowds due to their disabilities. (*Id.*).

Ms. Foley takes a variety of medications and sees a psychiatrist. (Tr. 46). She has been on medication for her depression since 2010. (*Id.*). Following her youngest son's birth, she was diagnosed with post-partum depression. (*Id.*). She saw a psychologist for a few months, but he became busy with other obligations and she now only sees him if she "really needs to talk to somebody." (Tr. 47). She also saw a licensed social worker who assisted her in getting to the root of her problems. (*Id.*). She did not continue to work with the licensed social worker because he also became unavailable. (*Id.*).

Ms. Foley has good days and bad days. (Tr. 48). Her psychiatrist is currently reassessing her medications. (*Id.*). She began to have more bad days, even to the point where she did not want to socialize with her family, and hopes that a different medication regimen will help. (*Id.*). Her medications allow her to do basic things, like take her sons to school, visit the grocery store, and help manage her husband's disability. (*Id.*). Ms. Foley has dealt with several problems with her insurance covering her medications. (Tr. 48-49).

Ms. Foley does not smoke cigarettes, drink alcohol, or use marijuana or other illegal drugs. (Tr. 50). She has two dogs and a kitten at home, and she can feed them and change the litter. (*Id.*). Her children wash themselves, dress themselves, and can get themselves a snack if they are hungry. (*Id.*). Ms. Foley makes sure they complete their chores, change their clothes, stay on top of their hygiene, and keep on-task with school; she also helps manage one son's diabetes. (Tr. 51). Her son can give himself insulin shots. (*Id.*). She checks in once or twice a week to make sure they are on track with their schoolwork. (*Id.*).

Ms. Foley occasionally requires reminders to attend to her own personal care needs. (Tr. 52). When she is very depressed, her husband will remind her to bathe and try to focus on other things besides sitting in the bedroom. (*Id.*). She can vacuum, sweep, wash dishes, do laundry, and prepare food. (Tr. 53). She goes grocery shopping twice a month. (*Id.*).

To pass time during the day, she likes to read and sit on her porch and watch her children play outside. (*Id.*). She reads a couple of books a month, but it takes her a while due to her dyslexia. (Tr. 54). When she is depressed, she goes weeks without reading at all. (*Id.*). She likes to go fishing with her family but does not have many friends. (*Id.*). She and her family do not go to restaurants or crowded, busy places. (*Id.*). Her husband is partially in a wheelchair. (Tr. 55).

On a typical day, Ms. Foley gets up, wakes her children, and ensures they have breakfast. (*Id.*). She goes to a pharmacy drive-through to pick up her husband's medication. (*Id.*). She makes sure her children were continuing their schoolwork, makes them lunch, and checks her son's blood sugar. (*Id.*). In the afternoon, her family sits outside, has dinner, and "chills out" the rest of the night. (Tr. 56).

When her children attended school in-person, Ms. Foley volunteered in their classroom once a month, but reported it was very hard for her. (*Id.*). She had no problem with one-on-one parent teacher conferences. (Tr. 57). She does not believe any of her physical issues prevent her from working but believes that her mental conditions do. (*Id.*).

She has trouble sleeping, and during a "bad" month or week, she will isolate in her room every day. (Tr. 58). She gets three hours of restful sleep a night and feels groggy and worn out every day. (Tr. 58-59). She takes naps twice a week for half an hour and has little appetite. (Tr. 59). Ms. Foley experiences panic attacks, in which she will start shaking, crying, and self-isolate. (Tr. 59-60).

8

VE Michele Edge then testified.

**Hypothetical One.**VE Edge first assumed a hypothetical individual of Ms. Foley's age, education, and work history who could perform light work with the following limitations: can frequently climb ramps or stairs, but can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; must avoid all exposure to workplace hazards, such as unprotected heights; can perform detailed but not complex tasks, meaning that the person can perform semi-skilled work, but not at a production rate pace, as in assembly line work; can interact occasionally with others, but with no responsibility for sales, arbitration, negotiation, confrontation, conflict resolution, or the safety or welfare of others; and can adapt to occasional changes in the work setting or the team, so long as those changes are explained in advance and implemented gradually. (Tr. 61-62). According to VE Edge, such an individual could not perform Ms. Foley's past work. (Tr. 62). However, that individual could work as a mail clerk (DOT #209.687-023), routing clerk (DOT #222.687-022), or merchandise marker (DOT #209.587.034). (*Id.*).

**Hypothetical Two.** Using the same assumptions of Hypothetical One, VE Edge further assumed the individual could never interact with members of the public as part of her job duties. (Tr. 62-63). VE Edge testified such an individual could still perform the mail clerk and routing clerk jobs, but rather than merchandise marker, the individual could work as a laundry worker (DOT #302.685-010). (Tr. 63).

**Hypothetical Three.** VE Edge then assumed the same facts as in Hypotheticals One and Two, with the added limitation that the individual would be limited to performance of simple,

routine tasks. (*Id.*). VE Edge testified that in either case, the individual could still perform all the light exertion jobs identified previously. (*Id.*).

VE Edge testified that employers tolerate no more than 10% off-task work behavior (Tr. 63), and no more than two absences per month, which often includes coming in late and leaving early (Tr. 64). Ms. Foley's attorney then asked VE Edge to assume the most recent hypothetical individual could not effectively interact with others, including supervisors and coworkers. (*Id.*). VE Edge testified that requiring isolated work environments would be work-preclusive. (*Id.*).

## The ALJ's Decision

The ALJ's decision, dated May 5, 2021, included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 3, 2020, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: diabetes mellitus type 2; obesity; major depressive disorder with psychotic features; anxiety disorder (also diagnosed as social anxiety and agoraphobia); and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with certain restrictions. Specifically, the claimant can frequently climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, or crawl. She must avoid all exposure to workplace hazards such as unprotected heights. She can perform detailed but not complex tasks, meaning she can perform semiskilled work, but not at a production rate pace (such as assembly line work). She can interact occasionally with others, with no responsibility for sales, arbitration, negotiation, confrontation, conflict resolution, or the safety or welfare of others. She can never interact

10

with members of the public as part of her job duties. She can adapt to occasional changes in the work setting or routine so long as those changes are explained in advance and implemented gradually.

5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.    The claimant was born on April 7, 1985 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education (20 CFR 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since February 3, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-27).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures

and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1.   Was claimant engaged in a substantial gainful activity?

2.   Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.   Does the severe impairment meet one of the listed impairments?

4.   What is claimant's residual functional capacity and can claimant perform past relevant work?

5.   Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Ms. Foley argues the ALJ committed three errors: finding CNP Kimble's opinion unpersuasive; failing to find Ms. Foley's psychological symptoms met Listings 12.04, 12.06, or 12.15; and finding Ms. Foley and her husband's testimony regarding her limitations not credible. (Pl.'s Br., ECF #9, PageID 658). I find none of these arguments persuasive.

## I. Substantial evidence supports the ALJ's finding CNP Kimble's opinion unpersuasive.

Ms. Foley first argues the ALJ should have given more weight to the opinion of CNP Kimble, Ms. Foley's treating source. (Pl.'s Br., ECF #9, PageID 665-66). CNP Kimble had been treating Ms. Foley since January 2020 for PTSD, psychotic affective disorder, major depressive disorder, insomnia, morbid obesity, and agoraphobia. (*Id.*, citing Tr. 419-20). According to CNP Kimble, Ms. Foley would have no useful ability to function with work in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms, remembering locations and work-like procedures, understanding and remembering detailed instructions, and accepting instructions and responding appropriately to criticism from supervisors. (*Id.*). CNP Kimble believed Ms. Foley could not meet competitive standards in maintaining attention and concentration for extended periods, performing activities within a schedule, sustaining an ordinary routine without special supervision, performing at a consistent pace without an unreasonable number and length of rest periods, understanding and remembering very short and simple instructions, interacting appropriately with

14

the general public, and responding appropriately to changes in the work setting. (*Id.*). Finally, she

opined Ms. Foley would be off task more than 50% of the time. (*Id.*).

The ALJ found CNP Kimble's opinion unpersuasive:

The undersigned also reviewed a mental impairment questionnaire completed by Ms. Kimble, the claimant's mental health care provider (7F). Ms. Kimble opined that the claimant was either unable to perform or was seriously limited in her ability in most mental areas of functioning and would be off-task in excess of 50% of a workday. The undersigned does not find Ms. Kimble's opinion persuasive as it is not consistent with objective observations made on examination by Ms. Kimble as well as other providers, nor is it consistent with the claimant's presentation at the hearing. Ms. Kimble's opinion appears to overly rely on the claimant's own subjective report.

(Tr. 23).

An ALJ is not required to defer to or give any specific evidentiary weight to a medical

opinion, is not bound by the "treating physician rule," and is not required to give a treating source

controlling weight. 20 C.F.R. § 416.920c(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020

WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Instead, the ALJ must articulate the consideration

given to the medical opinions in the record, grounded in the two "most important factors" of

supportability[2] and consistency.[3] 20 C.F.R. § 416.920c(b); *see also Hamade v. Kijakazi*, No. 21-2973,

2022 WL 4487896, *3 (6th Cir. Aug. 23, 2022) ("For claims filed after March 27, 2017, the

Commissioner does not give specific evidentiary weight, including controlling weight, to any

---

[2]    "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[3]    "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

medical opinions" but instead "assesses medical opinions in light of relevant factors, including the consistency with other evidence in the record, and the length, frequency, and extent of the treatment relationship.") (quotation omitted). An ALJ must explain how she considered the factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors, absent the ALJ's finding that two opinions are "equally" persuasive. *See* 20 C.F.R. § 416.920c(b)(2)-(3).

Agency regulations no longer require deference to a treating physician's opinion, but the reason-giving requirement still exists so claimants (and reviewing courts) may understand the disposition of their claims. *See Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 908 (E.D. Mich. 2021) (applying the reason-giving requirement "with equal force to the new regulations, which require explanations for determinations that a medical opinion is unpersuasive."). While the new regulations may be less demanding than the former rules, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). And "because of the greater latitude afforded ALJs under the new regulations, the importance of cogent explanations is perhaps even more important." *Hardy*, 554 F. Supp. 3d at 908. Agency regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the claimant's] disability

determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

In this case, the ALJ rejected CNP Kimble's opinion because it was inconsistent with objective observations CNP Kimble and other providers made on examination, and how Ms. Foley presented at the hearing. (Tr. 23). Additionally, the ALJ believed CNP Kimble's opinion appeared to "overly rely" on Ms. Foley's own subjective reports. (*Id.*). This explanation meets the minimum level of articulation agency regulations require. The ALJ reviewed CNP Kimble's opinion and considered its supportability and consistency in the context of the entire medical record, then articulated her findings. *See* 20 C.F.R. § 416.920c(b). CNP Kimble's opinion was inconsistent with her examination of Ms. Foley and with clinical observations from other providers. (Tr. 23). In terms of supportability, CNP Kimble's opinion overly relied on Ms. Foley's self-reporting. (*Id.*).

Ms. Foley argues the ALJ failed to address the contrary evidence establishing support and consistency regarding CNP Kimble's opinion. (Pl.'s Br., ECF #9, PageID 668). But the ALJ did address that evidence. Specifically, the ALJ noted that Ms. Foley reported night terrors, flashbacks, paranoia, depression, anxiety, and not being comfortable around people. (Tr. 22). She considered CNP Kimble's treatment records and acknowledged that Ms. Foley told CNP Kimble she felt she was being watched when she leaves her home and was hypervigilant. (Tr. 22). To the extent Ms. Foley believes the ALJ's explanation for rejecting CNP Kimble's evaluation should have been more detailed, "the law does not require the ALJ to discuss every piece of evidence that is supportive or inconsistent with the RFC." *Byler v. Kijakazi*, No. 5:20-CV-1822, 2022 WL 980099, at *9 (N.D. Ohio Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 971384 (N.D. Ohio Mar. 31, 2022).

17

Ms. Foley also argues the ALJ improperly used her observations of Ms. Foley during the hearing as a basis for rejecting CNP Kimble's opinion. (Pl.'s Br., ECF #9, PageID 668-69). She then equates the observation to "sit-and-squirm" evidence the Sixth Circuit rebuffed in *Weaver v. Sec'y of Health & Hum. Servs.*, 722 F.2d 310, 312 (6th Cir. 1983). But *Weaver* is distinguishable. There, the ALJ discounted the claimant's complaints of pain solely based on his own observation of the claimant at the hearing. *Id.* The Sixth Circuit's opinion emphasized that "observation and credibility are factors in this complicated equation, and as such are material, relevant, and admissible...." *Id.* The ALJ in this case did not discount CNP Kimble's opinion *solely* on the ALJ's observations of Ms. Foley at the hearing; rather, she offered it as one of several material and relevant reasons why she found the opinion unpersuasive.

Based on the foregoing, I find the ALJ met the minimum level of articulation required in finding a medical source opinion unpersuasive. She provided sufficient reasoning for my review, and, upon that review, I find substantial evidence supports the ALJ's finding CNP Kimble's opinion unpersuasive. I therefore reject Ms. Foley's first argument.

## II. Substantial evidence supports the ALJ's determination Ms. Foley did not meet Listings 12.04, 12.06, and 12.15.

Ms. Foley next argues the ALJ erred at Step Three by failing to find the combination of Ms. Foley's psychological symptoms met Listing 12.04, or 12.15, which would preclude her from engaging in substantial gainful activity on a full-time and sustained basis. (Pl.'s Br., ECF #9, PageID 669).

Listings 12.04, 12.06, and 12.15 are met when requirements in paragraphs A and B, or in paragraphs A and C, are satisfied. 20 C.F.R. Pt. 404. Subpt. P. App. 1, §§ 12.04, 12.06, 12.15. The Commissioner concedes Ms. Foley meets the requirements of paragraph A. (Comm'r's Br., ECF

#11, PageID 694). Ms. Foley does not claim she satisfies the requirements of paragraph C. (Pl.'s Br., ECF #9, PageID 672-74). Accordingly, the only remaining question is whether the ALJ erred in finding Ms. Foley did not meet the paragraph B criteria, which are identical for all three relevant listings. *See Perrin v. Comm'r of Soc. Sec.*, No. 1:20cv2235, 2022 WL 899544, at *1 n.19 (N.D. Ohio Mar. 28, 2022) ("Both Listing 12.06 and 12.15 have the same criteria in paragraph B.").

Paragraph B requires an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404. Subpt. P. App. 1, §§ 12.04, 12.06, 12.15.

The ALJ found Ms. Foley has a *mild* restriction in her ability to understand, remember, or apply information; a *moderate* restriction in her ability to interact with others; a *moderate* restriction in her ability to concentrate, persist, or maintain pace; and a *moderate* restriction in her ability to adapt or manage herself. (Tr. 18). Because the ALJ found Ms. Foley did not have an *extreme* limitation in one, or a *marked* limitation in two, of the paragraph B criteria, Ms. Foley did not meet any of the three Listings in question. (*Id.*).

To raise a "substantial question" as to whether the claimant has satisfied a Listing, the claimant must do more than point to evidence on which the ALJ could have based her findings. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432 (6th Cir. 2014) (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. App'x 639, 641 (6th Cir. 2013)). Rather, the claimant must point to specific evidence demonstrating she reasonably meets or equals every requirement of the Listing. *Id.*

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (noting that, without such analysis, it is impossible for a reviewing court to determine whether substantial evidence supported the decision). Further, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Serv.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (quoting *Gooch v. Sec'y of Health & Human Serv.*, 833 F.2d 589, 592 (6th Cir. 1987)).

The ALJ's evaluation of the medical listings need not directly address every piece of evidence a party submits. *Kornecky v. Commissioner*, 167 F. App'x 496, 508 (6th Cir. 2006). Although the ALJ must discuss significant evidence supporting her decision and explain her conclusions with sufficient detail to permit meaningful review, the ALJ need not incorporate all the information she relied on into a single tidy paragraph. *See Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (noting that the court "read[s] the ALJ's decision as a whole and with common sense").

Ms. Foley incorrectly argues the ALJ acted outside her "zone of choice" in concluding Ms. Foley only had moderate limitations in each of the paragraph B criteria. (Pl.'s Br., ECF #9, PageID 673). Instead, if substantial evidence supports the ALJ's Listing determination, then she operates within the "zone of choice." *See Hines v. Berryhill*, No. 5:17CV2332, 2018 WL 5634329, at *21 (N.D. Ohio Sept. 24, 2018), *report and recommendation adopted*, 2018 WL 6074402 (N.D. Ohio

Nov. 21, 2018) ("Here, the factual findings supporting the ALJ's determination that Hines does not meet or equal the requirements of Listing 14.02A are within that 'zone of choice' and thus supported by substantial evidence."); *Sherwood v. Comm'r of Soc. Sec.*, No. 3:20-CV-1037, 2021 WL 8342807, at *15 (N.D. Ohio June 21, 2021) ("Because substantial evidence supported the ALJ's finding that Sherwood did not satisfy the severity criteria for Listing 1.04, that decision fell within the Commissioner's 'zone of choice' and cannot be overturned by this court."); *Guthrie v. Astrue*, No. 1:10-CV-858, 2011 WL 7583572, at *2 (S.D. Ohio Nov. 15, 2011), *report and recommendation adopted*, 2012 WL 999155 (S.D. Ohio Mar. 22, 2012) ("I conclude that the ALJ's conclusion that Plaintiff does not meet or equal the referenced Listing must be affirmed as within the acceptable 'zone of choice,' because it is amply supported by substantial evidence in the record."). I find substantial evidence supports the ALJ's finding Ms. Foley's limitations failed to satisfy the paragraph B criteria necessary to meet or equal the Listings.

A limitation is *mild* when the claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is slightly limited. 20 C.F.R. Pt. 404. Subpt. P. App. 1, § 12.00(F). A limitation is *moderate* when a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is fair; a *marked* limitation is when the claimant's functioning is severely limited. *Id.*

First, the ALJ found a *mild* limitation in Ms. Foley's ability to understand, remember, or apply information. (Tr. 19). The ALJ cited Ms. Foley's history of learning disability and dyslexia, but noted she could read up to two books each month and continued to read for pleasure. (*Id.*). Additionally, the ALJ considered Ms. Foley's ability to obtain her high school diploma and attend

three and a half years of college. (*Id.*). The ALJ noted examinations throughout the record indicated no difficulties understanding and engaging in discussions. (*Id.*).

Second, the ALJ found Ms. Foley had a *moderate* restriction in her ability to interact with others. (Tr. 20). The ALJ cited Ms. Foley's panic attacks when leaving her home and her feelings of being watched. (*Id.*). However, the ALJ noted despite her anxiety, Ms. Foley has maintained her necessary functions, including grocery shopping, providing her children's transportation, and attending medical appointments. (*Id.*). Examinations consistently described Ms. Foley as pleasant, cooperative, and without any motor or other manifestations of anxiety. (*Id.*).

Third, the ALJ found a *moderate* restriction in Ms. Foley's ability to concentrate, persist, or maintain pace. (*Id.*). The ALJ explicitly considered symptoms of anxiety, depression, and PTSD, as well as mental status examinations reporting her concentration as "impaired." (*Id.*). Additionally, the ALJ explained Ms. Foley has difficulty focusing and concentrating in public or with increased stressors. (*Id.*). However, the ALJ also noted Ms. Foley could maintain sufficient focus to read books. (*Id.*).

Finally, the ALJ found a *moderate* restriction in Ms. Foley's ability to adapt or manage herself. (*Id.*). While able to perform her daily activities, including managing household chores and caring for her family, Ms. Foley did have difficulty coping with stressors and experiences increased symptoms. (*Id.*). The ALJ noted Ms. Foley continues to struggle with anxiety when she must leave her home. (*Id.*).

The ALJ's stated reasoning was set forth in sufficient detail to permit meaningful review. Reading the ALJ's decision as a whole and with common sense, the paragraph B findings are supported by substantial evidence. *Buckhannon*, 368 F. App'x at 678-79. Ms. Foley clearly has some

limitation in all four categories. She suffers panic attacks and sometimes debilitating anxiety and depression, and those problems are exacerbated when she leaves her home and interacts with others. (Tr. 23). But the ALJ correctly observed that, despite these limitations, Ms. Foley can take care of herself and her family, even when it requires leaving the home or interacting with others. She enjoys going fishing and the park with her family. (Tr. 53-54). She can bring her son to school for a test and drop him off with a teacher. (Tr. 49). She attends parent-teacher conferences with her husband. (Tr. 57). She could go by herself to pick up her husband's medication. (Tr. 55). She can concentrate on reading a book for three hours at a time. (Tr. 54). She reported no limitations on her ability to vacuum, sweep, do dishes and laundry, or prepare food. (Tr. 53).

Even if substantial evidence could support a different conclusion, I am bound to affirm the findings of the ALJ because the question lands squarely within her "zone of choice." As such, I reject Ms. Foley's second argument.

## III. Substantial evidence supports the ALJ's assignment of weight to Ms. Foley and her husband's subjective symptom evaluation.

Finally, Ms. Foley argues the ALJ failed to articulate any supportable rationale, beyond a "boilerplate paragraph," for discrediting Ms. Foley's subjective symptom reports, namely, her testimony at the hearing and the function reports Ms. Foley and her husband completed. (Pl.'s Br., ECF #9, PageID 677-78).

The ALJ must "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). The ALJ also evaluates what the agency formerly termed the "credibility" of a

plaintiff's statements about his or her symptoms. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 246-49 (6th Cir. 2007). In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p at *1 (rescinding and superseding SSR 96-7p). To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

Symptom evaluation is a two-step inquiry. First, the ALJ determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Second, the ALJ considers the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a), (c); SSR 16-3p at *4. In making this determination, the ALJ considers the following: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate their pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

24

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5. It is not enough for an ALJ "simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *9; *see also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

Ms. Foley points to the Function Report she completed in May 2020, where she reported having a major panic disorder and PTSD, preventing her from being in stressful situations and around people. (Tr. 205). She has a hard time getting her mind to settle long enough to read. (Tr. 209). Her husband reported that her agoraphobia sends her into a panic attack when she tries to go out, and her PTSD makes her think people are watching her. (Tr. 259). He explained his wife must be heavily medicated to go in public. (Tr. 262). Even though she can read, Ms. Foley has a hard time comprehending (Tr. 263). She believes this evidence should have been properly credited, and the ALJ must articulate reasons for discrediting the claimant's testimony. (Pl.'s Br., ECF #9, PageID 678). Further, she argues the ALJ disregarded any medical findings that would have precluded Ms. Foley from engaging in substantial gainful activity on a full time and sustained basis. (*Id.*).

The ALJ found that while Ms. Foley's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Ms. Foley's statements concerning the

intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the complete record. (Tr. 22). The ALJ explained:

> [w]hile the record does show that the claimant has limitations due to her mental health conditions, the severity of the allegations are not fully supported. She reports paranoia and social anxiety upon leaving her home. While this is documented, the claimant has also continued to be able to maintain her daily activities despite her difficulties. She is able to manage her household, care for her children and get them to their activities, grocery shop, visit with some friends in quiet places, meet and interact with teachers, and attend medical appointments. Furthermore, while anxiety and depression are consistently reported, the mental status examinations throughout the record describe the claimant as pleasant, cooperative, and able to follow along conversationally. This suggests at least some ability to leave her home and interact with others to some degree.

(Tr. 24).

The ALJ's explanation properly weighs the consistency of Ms. Foley and her husband's statements regarding the intensity of her symptoms against the remainder of the record. The ALJ weighed the claims against evidence of her daily activities and the observed intensity of her symptoms as 20 C.F.R. § 404.1529(c)(3) requires. The determination contained specific reasons for the weight given to Ms. Foley's subjective symptom reporting, is consistent with and supported by the evidence, and was clearly articulated so Ms. Foley and this Court can assess how the adjudicator evaluated the claimant's symptoms. *See* SSR 16-3p. Because the ALJ sufficiently articulated supportable reasoning for rejecting, in part, Ms. Foley and her husband's subjective symptom evaluations, the determination is supported by substantial evidence. For that reason, I reject Ms. Foley's third argument.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I

**AFFIRM** the Commissioner's decision denying supplemental security income.

Dated: February 27, 2023

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

27